Case No. 22-2142

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

               Plaintiff-Appellee,

   v.

DOUGLAS D. SMITH,

                Defendant-Appellant.

Appeal from the U.S. District Court for the District of New Mexico,
the Honorable Judith C. Herrera, Case No. 1:18-CR-03495-JCH

---

## BRIEF OF THE STATE OF NEW MEXICO AS *AMICUS CURIAE* IN SUPPORT OF THE UNITED STATES AND AFFIRMANCE

---

RAÚL TORREZ
*Attorney General*
Aletheia V.P. Allen
*Solicitor General*
201 Third St. NW, Suite 300
Albuquerque, NM 87102
(505) 717-3500

Ellen Venegas
*Assistant Attorney General*
408 Galisteo St.
Santa Fe, NM 87501
(505) 537-4753


*Counsel for Amicus Curiae the State
of New Mexico*


July 12, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..........................................................................ii

INTEREST OF AMICUS CURIAE .......................................................1

ARGUMENT .........................................................................................2

CONCLUSION .....................................................................................8

STATEMENT OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS ......10

CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS ..11

CERTIFICATE OF SERVICE ..............................................................11

# TABLE OF AUTHORITIES

## Cases

*Alaska v. Native Vill. of Venetie Tribal Gov't*, 522 U.S. 520 (1998) ........................4

*Haaland v. Brackeen*, 143 S. Ct. 1609 (2023) .................................................3

*Hilderbrand v. Taylor*, 327 F.2d 205 (10th Cir. 1964) ...................................6

*Hydro Res., Inc. v. U.S. E.P.A.*, 608 F.3d 1131 (10th Cir. 2010) .........................2, 4

*Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S 237 (1985)..........5

*Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486 (2022)................................................1

*Seymour v. Superintendent of Wash. State Penitentiary*, 368 U.S. 351 (1962) .....4, 6

*Solem v. Bartlett*, 465 U.S. 463 (1984) .................................................4, 6

*State v. Romero*, 2006-NMSC-039, 140 N.M. 299, 142 P.3d 887 .........................7

*United States v. Antonio*, 936 F.3d 1117 (10th Cir. 2019)................................. 3, 6, 8

*United States v. Arrieta*, 436 F.3d 1246 (10th Cir. 2006) ...............................5

*United States v. Forty-Three Gallons of Whiskey*, 93 U.S. 188 (1876)....................4

*United States v. Gutierrez*, No. CR-M-375 LH (D.N.M. Dec. 1, 2000)
   (unpublished) ...............................................................................6

*United States v. Joseph*, 94 U.S. 614 (1877)................................................5

## Statutes

18 U.S.C. § 1151 ..................................................................... 2, 5, 6, 7, 8

18 U.S.C. § 1153 .................................................................................3

Indian Pueblo Land Act Amendments of 2005, Pub. L. No. 109-133, 119 Stat.
   2573, *codified at* 25 U.S.C. § 331................................................2

N.M. Stat. Ann. § 8-5-2(J) (1975)............................................................1

Pueblo Lands Act of 1924, 43 Stat. 636 ...................................................4

## Rules

Federal Rule of Appellate Procedure 29(a)(2)..........................................1

## Other Authorities

151 Cong. Rec. S980-01, S983 (Feb. 3, 2005) .........................................7

## INTEREST OF AMICUS CURIAE

The State of New Mexico files this brief in support of the United States and affirmance of the district court's jurisdictional ruling. The State takes no position on the sentencing issue Defendant raises. (Aplt. Br. 40–46) The Attorney General is authorized by statute to appear before federal courts "to represent and to be heard on behalf of the state when, in his judgment, the public interest of the state requires such action[,]" N.M. Stat. Ann. § 8-5-2(J) (1975), and the State is authorized to file an amicus brief pursuant to Federal Rule of Appellate Procedure 29(a)(2).

New Mexico "has a strong sovereign interest in ensuring public safety and criminal justice within its territory, and in protecting all crime victims." *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2501–02 (2022). "The State also has a strong interest in ensuring that criminal offenders . . . are appropriately punished and do not harm others in the State." *Id.* at 2502. With nineteen sovereign Pueblos in New Mexico, the State additionally has an interest in ensuring that Indian country status determinations are guided by certainty and practicality so as not to inhibit public safety.

The district court's jurisdictional ruling in this case safeguards New Mexico's interests by adhering to a consistent, common-sense approach—and one that is grounded in judicial precedent and Congressional intent—in assessing whether privately-owned property within the exterior boundaries of a Pueblo constitutes

Indian country. The district court's analysis concerning the Indian country status of such lands reflects Congress's intent, reduces uncertainty, and serves to enhance public safety for all inhabitants of New Mexico.

## ARGUMENT

Initially, the State notes its support for the Pueblos of Santa Clara, Acoma, Cochiti, Isleta, Laguna, and Zia, and the Zuni Tribe and the All Pueblo Council of Governors' (collectively, the Pueblos) motion to file a brief as amici curiae and expresses its full agreement with the arguments and analyses set forth in the Pueblos' brief. This Court has acknowledged the importance of understanding the "considerable history" surrounding the statutory definition of Indian country, *see Hydro Res., Inc. v. U.S. E.P.A.*, 608 F.3d 1131, 1156 (10th Cir. 2010) (rejecting the notion of viewing 18 U.S.C. § 1151(b) "in a vacuum"), and the Pueblos' brief provides an imperative overview of the history and precedent that inform the relevant legal analysis. The State also agrees with the arguments advanced by the United States. The State writes separately to supplement this briefing, and to explain that Congress's constitutional authority over Indian affairs extends to the exterior boundaries of a Pueblo and is not determined by title to land.

The jurisdictional question in this case begins and ends with the Indian Pueblo Land Act Amendments of 2005, Pub. L. No. 109-133, 119 Stat. 2573, *codified at* 25 U.S.C. § 331. In the 2005 amendments, Congress expressly provided for federal

criminal jurisdiction over offenses "described in chapter 53 of title 18" when the offenses are "committed by or against an Indian" and "committed anywhere within the exterior boundaries" of a New Mexico Pueblo. Defendant committed his crime within the exterior boundaries of the Santa Clara Pueblo against an Indian, and the crimes of murder and manslaughter are described in Chapter 53 at 18 U.S.C. § 1153. Just as this Court held with respect to a crime committed by an Indian on private fee land within the boundaries of the Sandia Pueblo in *United States v. Antonio*, 936 F.3d 1117, 1122–24 (10th Cir. 2019), the 2005 amendments confirm federal criminal jurisdiction in this case.

Defendant seeks to avoid this Court's holding in *Antonio* by claiming that the 2005 amendments exceed Congress's authority over Indian affairs. (Aplt. Br. 36–39) This argument ignores precedent and history.

The Supreme Court has continually "characterized Congress's power to legislate with respect to the Indian tribes as plenary and exclusive." *Haaland v. Brackeen*, 143 S. Ct. 1609, 1627 (2023) (internal quotation marks and citations omitted). Congressional authority in the realm of Indian affairs derives from various parts of the Constitution, including from "principles inherent in the Constitution's structure[.]" *Id.* at 1628. It has long been understood that Congress's authority in this regard includes defining the contours of Indian country, as well as modifying or diminishing the same. *See United States v. Forty-Three Gallons of Whiskey*, 93 U.S.

188, 191 (1876) ("Congress, having the power to define the 'Indian country,' . . . can either enlarge or diminish the boundaries of such country, as it deems best for the interests of intercourse or commerce."); *see also Alaska v. Native Vill. of Venetie Tribal Gov't*, 522 U.S. 520, 534 (1998) ("Whether the concept of Indian country should be modified is a question entirely for Congress."); *Solem v. Bartlett*, 465 U.S. 463, 470 (1984) ("[O]nly Congress can divest a reservation of its land and diminish its boundaries."). This constitutional authority includes the power to design a jurisdictional scheme that avoids the type of checkerboarding that would interfere with the enforcement of federal, state, and tribal laws. *See Seymour v. Superintendent of Wash. State Penitentiary*, 368 U.S. 351, 358 (1962).

Over a century ago, the Supreme Court acknowledged that Congress is vested with "constitutional authority to include pueblos within 'Indian country.'" *Hydro Res., Inc.*, 608 F.3d at 1155 (discussing *United States v. Sandoval*, 231 U.S. 28 (1913)). In *Sandoval*, the Court observed that Congress regarded Pueblos in New Mexico as dependent Indian communities and explained that "the questions whether, to what extent, and for what time they shall be recognized and dealt with as dependent tribes requiring the guardianship and protection of the United States are to be determined by Congress, and not by the courts." *Sandoval*, 231 U.S. at 46.

Congress exercised its constitutional authority over Pueblo affairs by enacting the Pueblo Lands Act of 1924, 43 Stat. 636, to settle the ownership status of certain

4

Pueblo lands, which had been "placed in serious doubt" by the then-disavowed analysis in *United States v. Joseph*, 94 U.S. 614 (1877). *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S 237, 243 (1985); *see United States v. Arrieta*, 436 F.3d 1246, 1249 (10th Cir. 2006). This Act established the manner to quiet title for land within the exterior boundaries of a Pueblo based on past transfers of putative title and adverse possession, and governed future transfers of land by a Pueblo, such that federal law governed the ownership of land within the exterior boundaries of the Pueblo. In this way, Congress "assumed complete jurisdiction over these lands." *Mountain States Tel. & Tel. Co.*, 472 U.S. at 252. Congress intended to remove the uncertainty in land ownership attributable to *Joseph*. Even though this exercise of federal jurisdiction applied to lands putatively owned by non-Indians in fee, there is little question that Congress had the constitutional authority to settle the ownership of these lands in the exercise of its plenary authority over Indian affairs. Defendant, in fact, does not contend otherwise with respect to the 1924 Act.

Congress later addressed private fee land in the specific context of federal criminal jurisdiction by defining Indian country as including "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation[.]" 18 U.S.C. § 1151(a). Congress did so to avoid "an impractical pattern of checkerboard jurisdiction[.]" *Seymour*, 368 U.S. at

358. As with the application of the Pueblo Lands Act to lands owned by non-Indians, there can be little question that Congress had the constitutional authority to include private fee land within the definition of Indian country in order to facilitate the enforcement of criminal laws within the limits of reservations. *See Hilderbrand v. Taylor*, 327 F.2d 205, 206 (10th Cir. 1964) (expressly rejecting the notion "that Congress does not have the constitutional power to define privately owned lands as Indian country"); *see also Solem*, 465 U.S. at 470 ("Once a block of land is set aside for an Indian Reservation and no matter what happens to the title of individual plots within the area, the entire block retains its reservation status until Congress explicitly indicates otherwise."). Again, Defendant does not contend otherwise.

However, the language of § 1151 harbored an ambiguity in light of the private ownership of land within the exterior boundaries of New Mexico Pueblos resulting from the Pueblo Lands Act; unlike § 1151(a), Congress did not refer to patented land in its description of dependent Indian communities in § 1151(b). "Under § 1151, these private holdings would not necessarily be subject to federal jurisdiction." *Antonio*, 936 F.3d at 1121. Indeed, this ambiguity resulted in conflicting federal and state court rulings. A federal court concluded that private fee land within the exterior boundaries of a Pueblo was excluded from § 1151(b), *United States v. Gutierrez*, No. CR-M-375 LH (D.N.M. Dec. 1, 2000) (unpublished), but the New Mexico Supreme Court reached the opposite conclusion, *State v. Romero*, 2006-NMSC-039, 140 N.M.

299, ¶ 24, 142 P.3d 887 ("Absent a clear congressional statement to change the status, the fact that the land is encompassed by the pueblo controls the jurisdictional issue. In sum, location within the exterior boundaries matters more than who holds title." (internal citation omitted)), *rev'g State v. Romero*, 2004-NMCA-012, 135 N.M. 53, 84 P.3d 670.

Congress thus faced not only the prospect of the type of checkerboard jurisdiction it sought to avoid in § 1151 but the much more drastic existence of prosecution-free zones within the exterior boundaries of Pueblos. And this potential public safety crisis was the inadvertent product of a lack of specificity in § 1151(b) in reference to the Pueblo Lands Act. Congress's solution to this problem in the 2005 amendments thus arose out of and was in direct response to Congress's earlier lawful exercise of its plenary constitutional authority over Indian affairs.[1] The 2005 amendments did not relate to an entirely new subject but were instead the natural

---

[1] As reflected in the congressional record, Senator Domenici introduced the 2005 amendments specifically to "clarify jurisdiction over [Pueblo] lands" because the lack of clarity had resulted in conflicting federal and state court decisions. 151 Cong. Rec. S980-01, S983 (Feb. 3, 2005) (statement of Sen. Domenici). Those conflicting decisions, "[r]ead in tandem, . . . lead to the result that neither Federal, State nor tribal law-enforcement officials have jurisdiction on thousands of acres of privately owned lands within the boundaries of Indian pueblos." *Id.* Senator Domenici stated: "The prospect of having lands in my State where anyone can commit any crime and not be prosecuted for it is untenable and something that needs to be fixed. The legislation I am introducing today clearly outlines who is responsible for trying these cases by clarifying when a crime should be prosecuted in Federal, tribal, or State court." *Id.*

evolution to the 1924 Act following the definition of Indian country in § 1151. That Congress waited until 2005 to state in clear and unambiguous terms the federal criminal jurisdiction over all lands within the boundaries of a Pueblo presents no constitutional impediment.

Throughout this Nation's history, the steadfast principle of plenary congressional authority has always guided inquiries about Indian affairs, including which lands constitute Indian country and the scope of federal criminal jurisdiction. Considering this abundant authority, Defendant's constitutional claim with respect to the 2005 amendments to the Pueblo Lands Act lacks any support in the law.

Defendant's arguments additionally do not survive the application of binding precedent. As briefed in detail by the United States, the Tenth Circuit recently held that privately-held land within the exterior boundaries of a Pueblo constitutes Indian country. (Appellee's Br. 20-26) According to this Court, the question of federal jurisdiction is governed by whether the offense "occurred on a tract of land covered by the Indian Pueblo Lands Act Amendments of 2005." *Antonio*, 936 F.3d at 1121. Because it is undisputed that the offense occurred within the exterior boundaries of the Santa Clara Pueblo, federal jurisdiction is appropriate.

## CONCLUSION

The parcel-by-parcel approach Defendant advocates vastly departs from Congressional intent and binding precedent. It would also unnecessarily burden law

enforcement at the expense of public safety, which is precisely what Congress sought to avoid when it enacted the 2005 amendments to the Pueblo Lands Act. The State of New Mexico agrees with the district court, the federal government, and the Pueblos that the land at issue is Indian country and Congress provided for federal jurisdiction over the offense. This Court should affirm the district court's jurisdictional ruling.

Respectfully submitted,

RAÚL TORREZ
*New Mexico Attorney General*

By:     /s/ Ellen Venegas
        Ellen Venegas
        *Assistant Attorney General*
        Office of the New Mexico Attorney
            General
        408 Galisteo Street
        Santa Fe, NM 87501
        (505) 537-4753
        evenegas@nmag.gov

        Aletheia V.P. Allen
        *Solicitor General*
        201 Third St. NW, Suite 300
        Albuquerque, NM 87102
        (505) 717-3500
        aallen@nmag.gov

        *Counsel for Amicus Curiae the*
        *State of New Mexico*

9

**STATEMENT OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), I certify that:

1)    This brief complies with the type-volume requirement of Federal Rule of Appellate Procedure 29(a)(5). It contains 2,231 words, excluding the parts of the brief excluded by Federal Rule of Appellate Procedure 32(f).

2)    This brief complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6). It is printed in Times New Roman, 14-point.

By:  /s/ Ellen Venegas
Ellen Venegas
Assistant Attorney General
Office of the New Mexico Attorney
    General
408 Galisteo Street
Santa Fe, NM 87501
(505) 537-4753
evenegas@nmag.gov

*Counsel for Amicus Curiae the*
*State of New Mexico*

10

**CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS**

In accordance with the court's CM/ECF User's Manual, I hereby certify that all required privacy redactions have been made. In addition, I certify that the hard copies of this pleading that may be required to be submitted to the court are exact copies of the ECF filing, and the ECF submission has been scanned for viruses with Defender for Endpoint (US Government GCC G5) (version 4.18.23050.5, last updated June 14, 2023) and, according to the program, is free of viruses.

**CERTIFICATE OF SERVICE**

On July 12, 2023, I filed the foregoing document through the Court's CM/ECF system, which caused all parties or counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.



_____/s/ Ellen Venegas_____
Ellen Venegas

11